IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BRENDA K. BRISON                                                                                      PLAINTIFF

v.                                          CASE NO.       12-2328

CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                              DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.  Procedural Background:

The plaintiff filed an applications for DIB on May 7, 2008 , alleging an onset date of March 24, 1997 (T. 162), due to plaintiff's back problems, stage 4 cirrhosis of the liver, breast cancer, and being diabetic. (T. 190). She subsequently amended her onset date to February 1, 2001. (T. 190).   Plaintiff's applications were denied initially and on reconsideration.  Plaintiff

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

then requested an administrative hearing, which was held on October 1, 2009 (T. 37-50)[2] and August 19, 2011 (T. 51-64). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 60 and 62 years of age respectively and possessed a GED. The Plaintiff had past relevant work ("PRW") experience as a meat wrapper and housekeeper (T. 191).

On October 4, 2011, the Administrative Law Judge ("ALJ") concluded that plaintiff's status post breast cancer did not constitute a severe impairment. T. 14. The ALJ found that plaintiff was "not under a disability, as defined in the Social Security Act, at any time from February 1, 2001, the alleged onset date, through September 30, 2001, the date last insured (20 CFR 404.1520(c))." On October 31, 2012, the Appeals Council denied Plaintiff's request for review (Tr. 1). Therefore, the ALJ's final decision of October 4, 2011 became the Commissioner's final administrative decision. Plaintiff subsequently filed this action in federal court seeking review.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial

---

[2]The completed record was lost and the case was remanded by the Appeals Council to complete the record. (T. 81).

evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

The court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings

before the Commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is supported by substantial evidence.

## A. Relevant Time Period

The ALJ noted that the Plaintiff's "earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through September 30, 2001 (hereinafter "the date last insured"). Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." T. 10. This finding is not contested.

## B. Step Two Determination

The Plaintiff contends that the ALJ erred in determining that the Plaintiff did not have a severe impairment and concluding the sequential evaluation at step two. (ECF No. 13, p. 9).

Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) At step two of the sequential evaluation process, the claimant bears the burden of proving that he has a severe impairment. *Nguyen v. Chater*, 75 F.3d 429, 430-431 (8th Cir. 1996). An impairment or combination of impairments is not severe if there is no more than a minimal effect on the claimant's ability to work. *See, e.g., Nguyen*, 75 F.3d at 431. A slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities is not a severe impairment. SSR 96-3p, 1996 WL 374181 (1996); SSR 85-28, 1985 WL 56856 (1985). If the claimant is not suffering a severe impairment,

he is not eligible for disability insurance benefits. 20 C.F.R. § 404.1520(c).

### 1. Lymphedema[3] and Cellulitis[4]

The Plaintiff contends that ALJ did not properly evaluate her lymphedema and Cellulitis. On February 11, 2000. Plaintiff was diagnosed with infiltrating ductal carcinoma of the right breast, and she underwent right partial mastectomy by Thomas Kelly, M.D., a surgeon (Tr. 291).

Plaintiff completed her course of radiotherapy for right breast carcinoma on May 2, 2000. She tolerated the treatment very well and it was noted that she was on Tamoxifen[5]. (Tr. 290). On May 1, 2000, Doctors again noted Plaintiff had completed radiation treatment and stated that was the recommended protocol (Tr. 290). Plaintiff experienced some firmness and discomfort on the right breast which was not unexpected (Tr. 268). Doctors reported that Plaintiff would be allowed to return to work in the near future and she was given a release to that effect (Tr. 269). Plaintiff was treated for irritation of the right breast with antibiotics on July 26, 2000 by David Hunter, M.D. (Tr. 268).90). She began taking Tamoxifen as a measure to prevent recurrence of the cancer (Tr. 290).   On August 3, 2000, Dr. Kelly reported that Plaintiff had been released to work earlier but had cellulitis of the right breast and did not return to work after she was last

---

[3]Lymphedema refers to swelling that generally occurs in one of your arms or legs. Although lymphedema tends to affect just one arm or leg, sometimes both arms or both legs may be swollen.  Lymphedema is caused by a blockage in your lymphatic system, an important part of your immune and circulatory systems. The blockage prevents lymph fluid from draining well, and as the fluid builds up, the swelling continues. Lymphedema is most commonly caused by the removal of or damage to lymph nodes as a part of cancer treatment.  www.mayoclinic.org

[4]Cellulitis is a common, potentially serious bacterial skin infection. Cellulitis appears as a swollen, red area of skin that feels hot and tender, and it may spread rapidly.  www.mayoclinic.org.

[5]Tamoxifen blocks the actions of estrogen, a female hormone. Certain types of breast cancer require estrogen to grow. Tamoxifen is used to treat some types of breast cancer in men and women.

seen. He increased her Ceftin[6] to 500 mg t.i.d and prescribed Lodine[7] 400 mg q.i.d. (Tr. 264). On August 10, 2000 Dr. Kelly again saw the Plaintiff who was complaining about her right breast. He simply noted that she has "resolving discomfort in the right breast and that she had a full range of motion. " He also noted that she had some superficial burns on her right arm that she sustained while "assisting at her husbands welding shop." (T. 263). On September 7, 2000, Cooper Clinic reported that Plaintiff still had some episodic swelling of the right posterior arm which was not severe. Plaintiff had persistent swelling of the right breast and some redness. She was prescribed an antibiotic which did not alleviate her symptoms. But she reported that the swelling and redness subsided somewhat (Tr. 260). On September 21, 2000, Lester Barnes, M.D., reported that Plaintiff's right arm looked really good and her liver was not enlarged. Dr. Barnes opined that he believed she was doing exceptionally well (Tr. 298).

In May 2001 Dr. Barnes noted that the Plaintiff had a "lymphangitis of the breast from which she spontaneously recovered." (T. 319). The Plaintiff then saw Dr. Barnes from February 2002 through August 2003 and all of her exams were normal. (T. 435, 434, 433, 432, 431, 430, 428). In November 2003 Dr. Barnes made reference to carpal tunnel surgery that the Plaintiff had undergone on her right wrist and she developed cellulitis of the right arm with lymphangitis (T. 426) but he did not attribute this to her breast cancer. It seems clear to the court that the Plaintiff's treating physician was of the opinion that the lymphangitis evidenced shortly after the Plaintiff's breast surgery had resolved. Impairments are generally not considered severe when

---

[6]Ceftin is in a group of drugs called cephalosporin (SEF a low spor in) antibiotics. It works by fighting bacteria in your body.

[7]Lodine is in a group of drugs called nonsteroidal anti-inflammatory drugs (NSAIDs). Lodine works by reducing hormones that cause inflammation and pain in the body.

they are stabilized by treatment. *See Johnston v. Apfel,* 210 F.3d 870, 875 (8th Cir. 2000).

**2. Hand Tremor**

The Plaintiff's complaint of hand tremor first appears in August 2000 as a subjective complaint. (T. 262). Plaintiff was examined by John Kareus, D.O., at Cooper Clinic on October 6, 2000 (Tr. 57-259). Plaintiff reported a tremor in her right hand, and she alleged some staggering for the last 3 or 4 months but just as she initiated walking (Tr. 257). Plaintiff also reported 2 headaches per week (Tr. 257). Plaintiff reported she could not work. Her mental status and motor examination were normal, and she exhibited 5/5 motor strength in both upper and lower extremities. Plaintiff's reflexes were intact and her coordination including gait and station were normal (Tr. 258-259). Plaintiff's spontaneous gait was normal and she was able to walk on her heels and toes with negative Romberg testing (Tr. 259). Dr. Kareus could not detect any right hand tremor at the examination. He also observed no rigidity or poverty of movement, she ambulated normally, and there was nothing to suggest an essential tremor (Tr. 259). Dr. Kareus did not prescribe any medication for tremors.

On November 22, 2000, Plaintiff was examined by Ronald Robinson, MD., at Cooper Clinic. Dr. Robinson could not detect or demonstrate any hand tremors and he could not palpate her spleen or liver, both of which appeared normal (Tr. 255). On January 2, 2001, Dr. Kareus reported he suspected Plaintiff might have possible Parkinson's disease with the tremor involving her arm. However, he reported that the tremor was about the same primarily on the right; and there were no other features. He reported the tremor was minimal and not very apparent during the examination (Tr. 253). Dr. Kareus once again opined that Plaintiff showed no significant tremor on examination and no rigidity to palpation. Her gait was normal (Tr. 253). He requested

a six month follow-up on the tremor (Tr. 253).

There does not appear to be another medical record dealing with hand tremors until January 23, 2006 when Dr. Kareus stated that he thought that the "tremor is really more of an essential tremor by history although it is totally unilateral." (T. 478) Again Dr. Kareus did not prescribe any medication for the Plaintiff although he did discuss medication with the Plaintiff. In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995).

The court also notes that the Plaintiff did not list Hand Tremor as a basis for her disability. (T. 190). The fact that the plaintiff did not allege the impairment as a basis for her disability in her application for disability benefits is significant, even if the evidence of the impairment was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001).

The court also notes that in the Plaintiff's Function Report completed in June 2008 the Plaintiff listed "cross stitch" as one of her hobbies. (T. 206). It is impossible for court to understand how the Plaintiff's hand tremor can be a sever impairment when she can perform such a detailed task as cross stitching. Regardless, there is no evidence that the reported hand tremor was sever on September 30, 2001.

**3. Dr. Carrick's Opinion**

The Plaintiff contends that the ALJ did not give proper weight to the opinion of the Plaintiff treating physician. (ECF No. 13, p. 11).

Dr. Alice Davidson, a non-examining consultive physician, was of the opinion in July

2008 that there was "insufficient medical evidence to rate the physical impairments on or before the date last insured of 9/30/2001." (T. 310). Dr. Bill Payne reviewed and affirmed Dr. Davidson's opinion in September 2008. (T. 314).

In June 2009 Dr. Carrick issued a Medical Source Statement which found that the Plaintiff could lift less than 10 pounds occasionally, less than 10 pounds frequently, stand and/or walk for less than 2 hours in an 8 hour day, (T. 330), and would have to alternate between sitting and standing to relieve pain. She had no ability to push and pull with her upper extremities and limited ability with her lower extremities. He also found that she could never climb, balance, kneel, crouch or crawl. (T. 331)[8].

Dr. Carrick's name first appears in a note by ANP Jones' in May 2004 concerning her TSH (thyroid stimulating hormone)level which ANP Jones noted was mildly elevated. The Plaintiff told ANP Jones that "she had this repeated at Dr. Carrick's office, and apparently it came back normal." ANP Jones advised the Plaintiff to exercise and loose weight. The balance of her exam was normal.(T. 422). There are no treatment notes in the record prepared by Dr. Carrick and there is no other place in the record that the court can find or has been directed to indicating that Dr. Carrick treated the Plaintiff prior to 2004.

It was proper for the ALJ to decline to give weight to the vague, conclusory, and unsupported opinions of treating physician (Dr. Carrick) on Plaintiff's residual functional capacity, *See Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010). It was also proper because Dr. Carrick's opinions were contrary to the opinions of her treating doctors at the time. *See*

---

[8]Dr. Carrick issued another MSS on October 22, 2010 but it makes no claim to address the Plaintiff's condition prior to September 1, 2001 and only references medical conditions that the Plaintiff suffered subsequent to September 1, 2001. (T. 570-572). This MSS was not considered by the court.

*Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010) (explaining that "[w]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (internal quotation marks and citation omitted)); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding that the ALJ properly discounted the treating physician's opinion that consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration); *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) (recognizing that "[w]e have upheld an ALJ's decision to discount a treating physician's [medical source statement] where the limitations listed on the form stand alone, and were never mentioned in [the physician's] numerous records o[f] treatment nor supported by any objective testing or reasoning" (first and second alterations added) (internal quotation marks and citation omitted)).

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated this February 10, 2014.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE